[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, whose maiden name was Suzanne Fleming, and the defendant were married in Kenmore, New York on June 1, 1968. The parties have resided together in Connecticut for over twenty-two years. The marriage between the parties has broken down without any reasonable prospects for reconciliation. There are no minor children issue of the marriage, and the plaintiff has no minor children from any other source. Neither party has received assistance from the State of Connecticut.
The defendant is not represented by counsel and did not file a pro se appearance before the hearing. At the hearing, he filed such an appearance at the request of the court. He was present subject to a subpoena duces tecum from the plaintiff. The husband and wife are living together, as of the day of trial, and shared the same bed until two weeks before the trial. The wife did not claim in her testimony that she told the husband about the trial coming up. Under these unusual circumstances, the court bent over backwards to make sure that the husband was not at a disadvantage due to lack of preparation or legal advice. The court first noted in the record that the defendant had not asked for a continuance. The defendant, despite this prodding, never did so during the trial. Just before the noon recess, the court stated that it would consider at 2 p.m. whether to postpone part of the evidence so that the defendant could confer with Attorney Deborah Grover with whom he said he had an appointment two days later. The defendant did not request such a postponement. This all relates to the fact that the defendant only went through the motions in contesting the case, without seriously challenging key testimony or arguing against any of the plaintiff's testimony or claims. The court concludes that, as an intelligent man, he knew well that his continuous course of unreasonable conduct towards his wife and children had destroyed any semblance of a happy and fulfilling marital life, and that he could expect that a down-the-middle division of assets with reasonably large alimony could be expected from any judge.
The wife was twenty-one and he was twenty-five when they married, after meeting at the University of Buffalo. She is now forty-nine and in good health. The husband is now fifty-three and in good health. They have three adult daughters: Laura, twenty-five CT Page 4255-V and married, living in Denver; Amy, twenty-three, a graduate student in anthropology at Rutgers; and Lynn, twenty-one, who attends a chiropractic college in Missouri.
The wife has a bachelor's degree in nursing, but hasn't practiced nursing since the children came along. She felt that she had to be home with the children because of the effect that the husband's uncontrollable temper might have on the children. Since 1983, she has worked at the Pope John Paul II Center for Health Care where she is a human resource assistant, earning approximately $22,000 a year. She works thirty hours a week, five days a week, at $14.05 per hour. She would work more hours for more pay, but the Center does not have sufficient funds to employ her for more hours. She is the number two personnel manager for 180 employees.
The husband has a B.A. in economics and a M.B.A. He was with Mobil for six years when they lived in Massachusetts and was next with Pitney-Bowes in Stamford for six years. He has been with Reader's Digest since 1981 as a middle manager. He presently earns about $84,000 a year and can expect a yearly bonus of approximately $8800.
The parties have owned three houses during the marriage, always in their joint names. The second one was bought in Danbury in 1973 for $47,500 and sold in 1986 for $222,000, with a net to them of $183,500. With this and other sums they had accumulated through their joint efforts, they built their present large and handsome colonial house in New Fairfield, which is presently mortgage free. The court further finds, on the uncontradicted testimony of the wife's appraiser, that the property is worth $300,000. The husband claimed, without any proof other than his own opinion, that the property is worth only $250,000. The appraiser made a thorough analysis using both cost of construction and some highly relevant comparables, including the recent sale of a house close by on the same road.
The parties have I.R.A.'s of about equal value. The husband has a profit-sharing plan with a present value of $139,000. The parties jointly own a securities portfolio presently worth about $37,000. The wife has a vested annual pension of about $3300 with Pope John Paul. This would be about twice that amount if she works until she is sixty-five. The husband has pension benefits with Reader's Digest, which will equal approximately $41,000 per year at sixty-five. If the wife should be awarded one-half this CT Page 4255-W pension, she would be limited to one-half the present value of $17,000 a year, while his benefits will continue to grow as long as he is employed at Reader's Digest.
The issue of fault dominates this unhappy family to an unusual degree. The husband, over the entire period of the marriage, indulged in vitriolic and uncontrolled rages over trivial matters, that struck fear and alarm in his wife and growing daughters. On the third day of the honeymoon, he first exploded. He would raise his voice and clench his fists, although he never used violence. The incidents were so frequent and shocking that it must surely be said that he was a house devil and street angel. For, in court, he was polite and respectful at all times.
The family lived with their own personal Mount Vesuvius. A few examples will suffice. He has always found things wrong with the house or yard. He wrecked every family event with his outbursts. He wrecked Laura's wedding by making a childish scene over a clogged drain in the shower. The wife and daughters cried until 2:45 a.m. the day before the wedding. Laura was extremely upset. Two years ago, the husband screamed and yelled at Laura and threw her out of the house, after which she underwent therapy.
To cut short this litany of examples of extreme mental cruelty, the court will merely cite Amy's anguished testimony. She confirmed her mother's testimony. In response to the court's inquiry as to whether there were ever any happy times in the Cushing family, she replied that yes there were happy times — when the father was not at home.
The husband did not deny this pattern of abuse. To his credit, he stated only that he was not proud of his behavior. To round out the issue of fault, the court must refer briefly to the fact that the wife shared a bed with the husband until two weeks ago. She claims that she shared his bed because she always had hope. The court concludes that, commendatory as her explanation is, there must have been underlying appreciation of the financial security he offered, plus lack of confidence in her ability to have a rewarding life alone.
The wife's proposals for the terms of the judgment are so eminently reasonable, that the court's award tracks them in almost every instance. But, first, comment must be made on the CT Page 4255-X husband's position with regard to these demands. His opposition was mild indeed. His claims may be summarized as follow:
1. He opposes $5000 for legal fees.
2. He agrees he should pay some alimony, but feels that his wife's earnings are quite low. The court agrees, in general, but this does not affect the outcome for the following reasons:
(a) The wife is happy at her job.
 (b) Both parties lived frugally so that their combined assets will make each of them quite secure financially if divided down the middle.
 (c) No evidence was adduced as to the employment possibilities of a forty-nine year old R.N. long out of the profession.
3. He doesn't agree with a fifty-fifty split of assets, asking why he should "subsidize" his wife. This insensitive comment says a mouthful. The court commented that perhaps he should "subsidize" her because she gave up her best career opportunities to raise their children. If he had stayed home during their formative years, she might now be earning $90,000 a year.
The court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81(c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
DISSOLUTION
The marriage is dissolved on the grounds of irretrievable breakdown.
ALIMONY
The defendant is ordered to pay to the plaintiff, as alimony, the sum of $26,000 per year, in equal weekly payments of $500. The alimony payments shall continue until the death of either party, the plaintiff's remarriage, or twelve years from the date of this decision. As to the amount, the plaintiff's attorney has CT Page 4255-Y furnished the court with a computation of the tax consequences of such an award. The defendant did not contest this claim. It shows that the plaintiff would have a net after tax income of $36,000, and the defendant $39,600. The plaintiff requested alimony for only ten years. The court finds that this is inadequate and has added two years to this claim to give the plaintiff a more solid financial cushion as she grows older.
PROPERTY ORDERS
1. The plaintiff shall retain her pension rights with her current employer.
2. The plaintiff is awarded one-half the defendant's pension/retirement benefits with Reader's Digest, as currently vested. The plaintiff is directed to submit a qualified domestic relations order, within thirty days, for the court's approval.
3. The plaintiff is awarded one-half of the defendant's profit-sharing plan with Reader's Digest, which is presently worth $139,000.
4. Each party shall retain their I.R.A.'s.
5. Each party shall retain their separate motor vehicles. They are not of equal value, and the plaintiff claims that she should receive $5000 to equalize the award. In view of other orders contained herein, the court rejects this claim. The defendant shall retain the 1968 Corvette, worth about $7500.
6. The joint stock holdings, worth at last report $37,000, shall be divided equally.
7. The accumulated furnishings and personal possessions shall be divided reasonably. If the parties cannot agree, the matter is referred to the Family Services office, and if that office cannot settle the matter, may be heard by this court.
8. The defendant shall maintain his existing group life insurance at work, with his wife as beneficiary, so long as he must pay alimony.
9. Each party shall retain existing bank accounts.
10. The defendant shall retain the approximately $3000 which CT Page 4255-Z he has in his employer's stock purchase plan.
REAL PROPERTY
The jointly owned property is ordered sold forthwith. The net proceeds of the sale shall be divided equally between the parties. If capital gains taxes are due and payable, each party shall be responsible for one-half of the same. Until such time as the property is sold, the parties may continue to remain in and jointly occupy the property. This provision, which is not an issue in the case, defies common sense, but it is not the only strange aspect of this sad family saga. So long as the parties reside together in the house, the defendant shall continue to pay all of the expenses with regard to the property, as he has previously done in the past, and the payment of alimony shall not commence until the date of the sale of the said property.
If the defendant wishes to purchase the plaintiff's interest in said property, he shall pay to the plaintiff the sum of $150,000. If he should elect to purchase her interest, he must notify her, in writing, within thirty days, and close within forty-five days of such notice.
Judgment will enter, accordingly.
T. Clark Hull, State Trial Referee